THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEMEKO HOLLAND,

                     Petitioner,

     v.

PATRICK GLEBE,

                    Respondent.

CASE NO. C14-00070-JCC-BAT

ORDER

This matter comes before the Court on the petition of Demeko Holland for writ of habeas corpus, challenging his convictions for murder in the second degree and unlawful possession of a firearm in the first degree (Dkt. No. 7). The Honorable Brian A. Tsuchida, United States Magistrate Judge, issued a Report and Recommendation ("R&R") (Dkt. No. 18) advising this Court to deny Holland's petition. Holland objects to the R&R (Dkt. No. 20).

After reviewing each of Holland's objections *de novo*, the parties' briefing, and the record, the Court hereby ADOPTS the R&R and DENIES the writ with one exception: because reasonable jurists may find the Court's decision on the validity of Holland's *Miranda* waiver debatable, the Court ISSUES a certificate of appealability ("COA") on this issue alone.

# I.      BACKGROUND

A.  **Procedural History**

The Court does not recite the detailed state procedural history, described in the R&R. Dkt. No. 18, p. 3–4. Upon petitioning this Court for writ of habeas corpus under 28 U.S.C. § 2254 and receiving the R&R, Holland objects. Holland's objections primarily repeat claims from his original petition. The Court understands Holland's objections as follows:

> **OBJECTION ONE:** That the influence of drugs and other factors rendered the waiver of his *Miranda* rights invalid.
>
> **OBJECTION TWO:** That prosecutorial misconduct took place during closing arguments, impermissibly shifting the burden of proof onto the defense, and violating his right to a fair trial.
>
> **OBJECTION THREE:** That the factual basis for his conviction is insufficient.
>
> **OBJECTION FOUR:** That cumulative error prejudiced his right to a fair trial.
>
> **OBJECTION FIVE:** That the firearm enhancement used to assess his murder sentence violated the Double Jeopardy Clause.

Dkt. No. 20.

Holland requests an evidentiary hearing regarding the waiver of his *Miranda* rights and the admissibility of statements he made after receiving *Miranda* warnings. *Id.* Holland also asks the Court to issue a COA with regard to his double jeopardy claim. *Id.*

B.  **Relevant Facts**

Holland seeks relief on the aforementioned five objections. He argues that his federal constitutional rights were violated during his custodial interrogation, trial, and sentencing.

On August 18, 2003 at approximately 11:20 a.m., 14-year-old David Chhin was shot and killed while riding his bicycle. Dkt. No. 17, Exhibit 2, p. 1. Eyewitnesses nearby gave varying descriptions of a black male seen running in the area at the time of the shooting. Dkt. No. 17, Exhibit 3, pp. 2–6. Of the seven witnesses asked to identify the suspect, one selected Holland

with seventy percent certainty.[1] *Id.*

At 11:46 a.m. the same day, Seattle Police Officer Richard Heideman stopped Holland ten blocks from the crime scene. When stopped, Holland asked, "Why did you stop me? I'm just out jogging." Dkt. No. 17, Exhibit 2, p.1. Holland then provided the officer with a false name and date of birth. Dkt. No. 17, Exhibit 3, pp. 6–7. Additional officers arrived, Holland was arrested, and Seattle Police Officer Lee read him his *Miranda* warnings from a card. Dkt. No. 17, Exhibit 2, p. 2. Officer Lee did not read the final question on the card: "Having these rights in mind, do you wish to talk to us now?" *Id.* at 3. In the officer's recollection, Holland acknowledged receipt of the warnings and continued to speak with the officers. *Id.* Under cross-examination, Officer Lee admitted that Holland's acknowledgement may have been "a simple [head] nod up and down." *Id.*

After receiving *Miranda* warnings, when asked if he understood why he was being stopped, Holland replied, "Is this about the shooting? Is the kid all right?" Dkt. No. 17, Exhibit 3, p. 7. The prosecution relied heavily on this incriminating statement in Holland's trial. *Id.* at 12.

Officers then took Holland to the police station and continued questioning. Dkt. No. 17, Exhibit 2, p. 2. The questioning lasted approximately six hours. Dkt. No. 17, Exhibit 3, p. 8. Throughout questioning, Holland was disheveled, moody, and emotional. Dkt. No. 17, Exhibit 2, p. 2. Holland attributes this behavior to the influence of a drug called "sherm" consisting of marijuana and PCP, as well as having only slept for two hours on the previous night. Dkt. No. 20, p. 2; Dkt. No. 17, Exhibit 3, pp. 8–9. A blood test taken that evening confirms the presence of THC and PCP in his system. Dkt. No. 17, Exhibit 3, p. 9.

Seattle Police Detective O'Neal eventually suggested Holland write a letter to the victim's family to express his remorse. Dkt. No. 17, Exhibit 2, p. 2. Holland said that "was a

---

[1] Five eyewitnesses were asked to view photo montages that included Holland's picture and did not identify him. Dkt. No. 17, Exhibit 3, pp. 2–6. One witness was present for a one-person "showup" of Holland and did not identify him. *Id.* at 4.

good idea, he liked the idea, but he would do it later" because on previous occasions after arrests he had given such statements and "been burned by it." *Id.*

At trial, in closing, Holland's defense attorney argued that Holland was affected by a drug addiction and was unable to remember events around the time of the shooting. Dkt. No. 17, Exhibit 2, p. 3. She also suggested that Holland overheard details of the shooting prior to questioning—thus explaining his asking "is the kid all right?" *Id.* The prosecutor's rebuttal included two responses to which Holland now objects as burden shifting. First, the prosecuting attorney asked three hypothetical questions: "Is there any testimony about the defendant's addiction to sherm or any other drug? Is there any testimony at all about the effects of sherm that he smoked that night? Is there any testimony on how it might or might not affect your memory, no." *Id.* Defendant did not object. *Id.* Second, the prosecutor commented on defense counsel's failure to establish that Holland overheard details about the shooting, arguing, "By golly, those witnesses were up there. Why didn't she ask them?" *Id.* at 4. The defense objected to burden shifting. *Id.*

Holland was convicted of unlawful possession of a firearm in the first degree and murder in the second degree. Dkt. No. 17, Exhibit 2, p. 4. The jury filled out a special verdict form finding that a firearm was used during the commission of the crime. Dkt. No. 17, Exhibit 10, p. 102 (Special Verdict Form).

## II.   DISCUSSION

### A.   Standard of Review

A district court reviews *de novo* the parts of a Magistrate's report to which any party objects. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition can only be granted if a state-court adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;
> or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), federal law is "clearly established" only if it is based on a United States Supreme Court holding that governed at the time of the relevant state-court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). It is not enough that the federal court be persuaded that a state-court decision is erroneous. *Id.* at 411. Rather, the appropriate inquiry is whether the state court application of federal law was objectively unreasonable. *Id.* at 409.

Under § 2254(d)(2), a state-court determination of facts is presumed correct unless rebutted by clear and convincing evidence. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (internal citation omitted). AEDPA demands deference to state court findings of fact, subject to a federal court's "real, credible doubts about the veracity of essential evidence and the person who created it." *Hall v. Dir. of Corrections*, 343 F.3d 976, 984 n.8 (9th Cir. 2003).

### B.    Evidentiary Hearing

An evidentiary hearing is appropriate if the habeas petitioner meets two conditions: (1) "He must allege facts which, if proven, would entitle him to relief, and (2) show that he did not receive a full and fair hearing in a state court either at the time of trial or in a collateral proceeding." *Gonzalez v. Pliler*, 341 F.3d 897, 903 (9th Cir. 2003) (internal quotation marks and citation omitted). Holland has not met these conditions and the Court finds it unnecessary to hold an evidentiary hearing. The R&R is ADOPTED in this respect.

### C.    Objection One: Validity of Petitioner's Waiver of *Miranda*

Holland contends that statements he made to the police on August 18, 2003 were inadmissible because he did not validly waive his *Miranda* right against self-incrimination. The R&R on this issue addresses whether the police were required to affirmatively ask Holland to waive his *Miranda* rights, which they did not. Dkt. No. 18, p. 4, 8; Dkt. No. 17, Exhibit 2, p. 3.

However, Holland objects on an additional ground: alleging that he was under the influence of drugs—in his words, "high as a kite"—during questioning, rendering his waiver of

1   *Miranda* invalid. Dkt. No. 20, p. 2.

2         The Fifth Amendment guarantees "[n]o person … shall be compelled in any criminal

3   case to be a witness against himself." U.S. Const. amend. V. This privilege applies to custodial

4   interrogations, *Miranda v. Arizona*, 384 U.S. 436, 478 (1966) and is binding on the states,

5   *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). The police must advise a suspect taken into custody of

6   his right to remain silent, that statements he makes can be used as evidence against him, and his

7   right to have an attorney present during questioning. *Miranda*, 384 U.S. at 444. A person may

8   waive these rights, either explicitly or implicitly, so long as the waiver is voluntary, knowing,

9   and intelligent. *Id.; North Carolina v. Butler*, 441 U.S. 369, 373–76 (1979). "Only if the totality

10  of the circumstances surrounding the interrogation reveal both an uncoerced choice and the

11  requisite level of comprehension may a court properly conclude that the *Miranda* rights have

12  been waived." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (internal quotation and citations

13  omitted).

14        A waiver of *Miranda* rights is voluntary if it is the product of rational intellect and free

15  will. *Blackburn v. Alabama*, 361 U.S. 199, 208 (1960). A state court's determination that a

16  *Miranda* waiver was voluntary is entitled to a presumption of correctness. *Miller v. Fenton*, 474

17  U.S. 104, 112 (1985). However, "the ultimate question whether, under the totality of the

18  circumstances, the challenged [statement] was obtained in a manner compatible with the

19  requirements of the Constitution is a matter for independent federal determination." *Id.*

20        The Court agrees with the Magistrate that an affirmative statement from Holland was not

21  necessary for his waiver to be deemed voluntary. Dkt. No. 18, pp. 8–9. There remain, however,

22  viable questions as to whether Holland's waiver was voluntary, knowing, and intelligent based

23  on the totality of the circumstances.

24        The Court disagrees with the Magistrate's finding that "[t]here is no evidence to conclude

25  that [Holland] did not understand his rights." Dkt. No. 18, p. 9. Reviewing the record, six factors

26  suggest that Holland did not understand the rights he relinquished by speaking to police. First,

1    Holland's remark about being "burned" in the past for issuing written statements casts doubt on

2    whether he understood that his oral answers to police questioning were also subject to use in

3    evidence against him. Dkt. No. 17, Exhibit 2, p. 2. Second, the presence of THC and PCP in

4    Holland's system may have decreased his comprehension and free will. Dkt. No. 17, Exhibit 3,

5    p. 9. Third, Holland's lack of sleep the previous night contributes to a potential lack of clarity

6    and understanding. *Id.* at 8–9. Fourth, the length of questioning—six hours—adds to the

7    possibility that Holland was fatigued and confused. *Id.* at 8. Fifth, the nature of some of

8    Holland's statements—for example, that he "may have" done the shooting (*Id.* at 6) or that it was

9    "possible" he had (Dkt. 17, Exhibit 3, p. 9)—sound not like voluntary confessions but rather

10   responses to police prompting. And sixth, the number of officers present over the course of arrest

11   and questioning – six – adds to the likelihood that Holland was intimidated while making the

12   statements he made. Dkt. No. 17, Exhibit 17, p. 5 (listing officers involved).

13        The Honorable Chris Washington, King County Superior Court, issued findings of fact

14   regarding the admissibility of Holland's statements. Dkt. No. 17, Exhibit 17. The court did not

15   address Holland's statement about being "burned," the blood testing showing drugs present in his

16   system,[2] Holland's alleged sleep deprivation, the length of questioning, the nature of Holland's

17   statements, or the number of officers present. *Id.* The court found that "[Officer] Lee read the

18   defendant the Advisement of Rights portion of her Miranda warnings card. Following advice of

19   those rights, the defendant stated that he acknowledged and understood them." *Id.* at 2. Later, at

20   trial, Officer Lee admitted that Holland's acknowledgement may not have been "stated" but

21   rather a nod of the head. Dkt. No. 17, Exhibit 2, p. 3.

22        Despite the factors identified by this Court raising doubts as to the validity of Holland's

23   *Miranda* waiver, the Court does not find that clearly established federal law was unreasonably

24   applied in Holland's case. The petitioner bears a high burden to establish unreasonable

25

26
_____

[2] The findings of fact do, however, acknowledge Holland's statement that he had been smoking "sherm." *Id.* at 3.

1   application of clearly established federal law. Despite misgivings about the validity of Holland's

2   *Miranda* waiver, it is not enough that the Court would have decided the issue differently—the

3   state court adjudication must have been *objectively* unreasonable. *Williams v. Taylor*, 529 U.S.

4   362, 409 (2000) (emphasis added).

5          While the Court finds that Holland has not met this burden, reasonable jurists may find

6   the Court's assessment of the validity of his *Miranda* waiver debatable. *Slack v. McDaniel*, 529

7   U.S. 473, 483–4 (2000). As such, the Court ISSUES a COA on this issue alone.

8          **D.      Remaining Objections:**

9          Holland's remaining objections are essentially restated arguments from his original

10  petition. Thus, the R&R has already addressed these claims. The Court ADOPTS the R&R with

11  respect to the remaining claims and DENIES the writ. Each objection is addressed briefly below.

12                *i.      Objection Two: Prosecutorial Misconduct*

13         Holland claims that impermissible burden shifting by the prosecutor during closing

14  arguments violated his due process rights. Dkt. Nos. 7, 20. Holland's objections make reference

15  to "Substantial Government Interference" preventing the development of evidence. Dkt. No. 20,

16  p. 2. The question, however, is one of prosecutorial misconduct.

17         A criminal defendant's right to due process is denied by prosecutorial misconduct when a

18  prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a

19  denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation

20  marks and citation omitted). Holland has not established that the state court adjudication of this

21  claim was contrary to, or an unreasonable application of, this clearly established federal law, and

22  as such the Court ADOPTS the R&R on this claim.

23                *ii.     Objection Three: Sufficiency of the Evidence*

24         Holland objects to the Magistrate's assessment of his claim regarding the sufficiency of

25  evidence. His objection raises two arguments with no support in the record; (1) first, that a key

26  eyewitness actually gave a description of a "tall Asian-Pacific Islander" when describing the

shooter and (2) second, that items of clothing that were DNA tested were never "identified as being worn by the shooter." Dkt. No. 20, p. 3. These appear to be meritless, last-ditch efforts to have this Court review his sufficiency of the evidence claim.

Finding Holland's objections regarding the sufficiency of the evidence meritless, the R&R's reasoning is ADOPTED on this claim.

### iii.    Objection Four: Cumulative Error

Holland makes a bare objection that "cumulative effect did prejudice [Petitioner's] Fair Trial rights." Dkt. No. 20, p. 4. Finding this objection meritless, the Court ADOPTS the R&R's reasoning on Holland's cumulative error claim.

### iv.    Objection Five: Double Jeopardy

Holland repeats his argument that the firearm sentencing enhancement constituted multiple punishments for the same offense in violation of the Double Jeopardy Clause. Dkt. No. 20, pp. 3–4.[3] Double jeopardy protections do not apply to non-capital sentencing proceedings. *Monge v. California*, 524 U.S. 721, 728 (1998). The Court therefore finds that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, this clearly established federal law, and as such ADOPTS the R&R on this claim.

## III.    CONCLUSION

For the foregoing reasons, the R&R of the Magistrate Judge (Dkt. No. 18) is ADOPTED and Demeko Holland's petition for writ of habeas corpus (Dkt. No. 7) is DENIED. As reasonable jurists may find the Court's assessment of the validity of Holland's *Miranda* waiver debatable, the Court ISSUES a COA on this issue alone.

//

//

---

[3] He also incorrectly states that the element was used to "elevate the degree of the murder from manslaughter or attempted to Second Degree." *Id.* at 3. Holland was, in fact, originally charged with murder in the first degree and not manslaughter.

1    DATED this 15th day of October 2014.

2

3

4

5

6

7

8                                      John C. Coughenour
                                       UNITED STATES DISTRICT JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
PAGE - 10